UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES MCKILLIP,<br><br>        Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>        Defendant. | Civil No. 09-2595-WQH(WVG)<br><br>REPORT AND RECOMMENDATION GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION TO DISMISS<br><br>(Doc. Nos. 14, 15) |

      On November 18, 2009, Plaintiff James McKillip (hereafter "Plaintiff"), filed a Complaint For Judicial Review And Remedy On Administrative Decision Under The Social Security Act [42 U.S.C. §405(g)]. On January 19, 2010, Defendant Michael J. Astrue (hereafter "Defendant"), filed an Answer to the Complaint and the administrative record (hereafter "Record" or "Tr."), pertaining to this case. Plaintiff has filed a Motion for Summary Judgment. Defendant has filed an Opposition to Plaintiff's Motion for Summary Judgment and a Cross-Motion for Summary Judgment. Plaintiff has filed a Reply to Defendant's Cross-Motion for Summary Judgment.

1    The Court, having reviewed Plaintiff's Motion for Summary
2    Judgment, Defendant's Opposition to Plaintiff's Motion for Summary
3    Judgment, Defendant's Cross-Motion for Summary Judgment, Plaintiff's
4    Reply to Defendant's Cross-Motion for Summary Judgment and the
5    Record filed by Defendant, hereby finds that Plaintiff is not
6    entitled to the relief requested and therefore RECOMMENDS that
7    Defendant's Motion for Summary Judgment be GRANTED and Plaintiff's
8    Motion for Summary Judgment be DENIED.

I

STATEMENT OF FACTS

Plaintiff was born on March 27, 1962. (Tr. 29). He attended college for two years and studied electronics assembly. (TR. 29-30). In 1982, Plaintiff suffered a head injury in a motor vehicle accident and was in a coma for 28 days. (Tr. 358). Thereafter, he worked as an auto service technician, as an electrician apprentice, as a home health worker and as a janitor at an elementary school. (Tr. 33-40). Plaintiff claims that he became unable to work on May 7, 2007. (Tr. 25).

A. Dr. Usha R. Ramineni

On February 23, 2007, Plaintiff was seen by Dr. Usha Ramineni (hereafter "Dr. Ramineni"), at Psycare Associates, for an initial psychiatric consultation. Plaintiff told Dr. Ramineni that he sought counseling because he had received a poor performance review at work. At the time, Plaintiff was working as a janitor at an elementary school. He said that his poor performance review stemmed from not securing certain areas of the school and being too close and friendly with teachers at the school. He complained of poor concentration, distractability and memory loss. Plaintiff stated

that he suffered a head injury in 1982 and had used marijuana and methamphetamine in the past. Dr. Ramineni examined Plaintiff and found him to have a cooperative attitude, organized thought processes and intact judgment and insight. However, Dr. Ramineni also found Plaintiff to be depressed with impaired memory. Dr. Ramineni gave Plaintiff a Global Assessment of Function score (hereafter "GAF") of 60.[1] (Tr. 354-358, 391-396).

In March 2007, Plaintiff saw Dr. Ramineni. Plaintiff reported that he continued to have a poor attention span and poor memory. (Tr. 353, 397).

In April 2007, Plaintiff again saw Dr. Ramineni. Dr. Ramineni reported that Plaintiff seemed confused, had low energy and memory loss. (Tr. 352, 398).

In May 2007, Plaintiff reported to Dr. Ramineni that he was tired and felt anxious. (Tr. 351, 398)

On July 23, 2007, Plaintiff received notice that his applications for Disability Insurance Income and Supplemental Social Security Income were denied. He reported to Dr. Ramineni that he had lost his job, and that he was contemplating suicide. Dr. Ramineni advised Plaintiff to go to the emergency room. Plaintiff agreed to go to the emergency room. (Tr. 350).

---

[1] The GAF scale is a tool for "reporting the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000). The clinician uses a scale of zero to 100 to consider "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness," not including impairments in functioning due to physical or environmental limitations. Id. at 34. A Global Assessment of Functioning score between 51 and 60 indicates "Moderate symptoms or moderate difficulty in social, occupational or school functioning. Browne v. Astrue, 2010 WL 3732122 (D. Or., September 21, 2010).

B. <u>Dr. C. Valette</u>

On June 26, 2007, C. Valette, Ph.D. (hereafter "Dr. Valette"), a Clinical Psychologist, examined Plaintiff in connection with his applications for Disability Insurance Benefits and Supplemental Social Security Income. Plaintiff reported to Dr. Valette that he attended Narcotics Anonymous meetings every day, was able to take care of his personal hygiene, was able to perform yard work, laundry tasks, cook, and take care of his own finances. He also commented to Dr. Valette that his hobbies included "getting naked, show off to girlfriends my collection of thong underwear." Dr. Valette observed that Plaintiff had a tendency to exaggerate his difficulties and "did not put forth his best effort into this evaluation. His poor scores are inconsistent with his adequate presentation, and reported functional abilities." Dr. Valette concluded that Plaintiff's intellectual functioning was in the average range and that he had no mental restrictions. (Tr. 322-323).

C. <u>Dr. G.M. Rivera-Miya</u>

On July 11, 2007, Dr. G.M. Rivera-Miya, M.D. (hereafter "Dr. Rivera-Miya"), a state agency psychiatrist, reviewed Plaintiff's records and opined that Plaintiff had a non-severe mental impairment. (Tr. 326). Dr. Rivera-Miya also opined that Plaintiff had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace. (Tr. 334).

D. <u>Dr. Nicodemus J. Garcia</u>

On July 23, 2007, after Plaintiff reported to Dr. Ramineni that he was contemplating suicide, he was seen by Dr. Nicodemus J. Garcia, M.D. (hereafter "Dr. Garcia"), a staff psychiatrist at the

County of San Diego Health & Human Services Agency, San Diego County Psychiatric Hospital. Plaintiff reported to Dr. Garcia that he was contemplating suicide. However, Dr. Garcia later noted that Plaintiff was not feeling suicidal. Dr. Garcia noted that Plaintiff was cooperative and pleasant during his examination, Plaintiff's thought contents were organized and coherent and his thought processes were well-directed. Dr. Garcia determined that Plaintiff had a GAF score of 65-70[2/] and concluded that Plaintiff's potential for harm was minimal. Dr. Garcia advised Plaintiff to continue to take his medications and discharged him from the hospital. (Tr. 382-383).

E. Dr. H. Susan Kower

In April 2008, Plaintiff began psychiatric treatment with Dr. H. Susan Kower, M.D. (hereafter "Dr. Kower"). On April 7, 2008, Dr. Kower noted that Plaintiff was alert and oriented, had coherent thoughts, was cooperative, depressed and anxious, and had difficulty concentrating. (Tr. 409, 423). She also noted that Plaintiff had impaired coping skills. (Tr. 410, 424). Dr. Kower gave Plaintiff a GAF score of 53.[3/]

On May 5, 2008, Dr. Kower opined that Plaintiff was "unable to be gainfully employed due to his Major Depression, Recurrent, and his acquired head injury." (Tr. 372).

On September 4, 2008, Dr. Kower stated that Plaintiff was

---

[2/]    See footnote 1. A GAF score of 61-70 indicates "(s)ome mild symptoms or some difficulty in social, occupational or school functioning... but generally functioning pretty well..." American Psychiatric Assn., Diagnostic & Statistical Manual of Mental Disorders, 32, (4th ed. 2000). Bartell v. Astrue, 2010 WL 2161783 (W.D. Wa., April 30, 2010).

[3/]    See footnote 1.

1  "unable to work due to Major Depression." (Tr. 375).

2  On October 6, 2008, Dr. Kower opined that Plaintiff was
3  "unable to work" due to "major depression, Recurrent/Anxiety
4  Disorder/acquired brain injury." (Tr. 373).

5  On December 27, 2008, Dr. Kower filled out a checklist of
6  Plaintiff's residual functional capacity. The checklist noted that
7  Plaintiff had "markedly limited ability" to: (1) remember locations
8  and work-like procedures; (2) understand and remember very short
9  simple and detailed instructions; (3) maintain attention and
10 concentration for extended periods; (4) perform activities within a
11 schedule, maintain regular attendance and be punctual; (5) sustain
12 an ordinary routine without special supervision; (6) work in
13 coordination with or in proximity to others without being distracted
14 by them; (7) make simple work-related decisions; (8) complete a
15 normal work day and work week without interruptions from psychologi-
16 cally based symptoms and perform at a consistent pace without an
17 unreasonable number and length of rest periods; (9) interact
18 appropriately with the general public; (10) ask simple questions or
19 request assistance; (11) accept instructions and respond appropri-
20 ately to criticism from supervisors; (12) get along with coworkers
21 or peers without distracting them or exhibiting behavioral extremes;
22 (13) respond appropriately to changes in the work setting; (14)
23 travel in unfamiliar places or use public transportation; and (15)
24 set realistic goals or make plans independently of others. (Tr. 376-
25 377).

26 At the end of the checklist, Dr. Kower noted that Plaintiff:

27 had a compromised short term memory and concentration,
   (Plaintiff) suffers from major depression and border-
28 line personality disorder, (Plaintiff) becomes easily
   overwhelmed by minimal stress, can become irritable

>     and depressed then unable to follow through. He has
>     interpersonal problems especially with authority
>     figures, can misinterpret interpersonal interactions
>     with co-workers - these are chronic conditions and
>     interfere with his ability to hold a job. His
>     prognosis is guarded.

(Tr. 378).

On April 20, 2009, Dr. Kower opined that Plaintiff was alert, oriented and cooperative, exhibited normal speech and judgment, had normal intellect, but was depressed and anxious, had poor recent memory and the inability to concentrate. (Tr. 406, 420).

## II

## PROCEDURAL HISTORY

On May 1, 2007, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Social Security Income. (Tr. 133-144). Plaintiff alleged that he became unable to work because of an acquired brain injury, depression, anxiety, diabetes and high blood pressure. (Tr. 232). The Commissioner of Social Security denied his application initially and upon reconsideration. (Tr. 53-56). Thereafter, Plaintiff requested a hearing before an Administrative Law Judge (hereafter "ALJ"). On June 25, 2009, Plaintiff appeared and testified before Jerry F. Muskrat. (Tr. 18-52). On September 18, 2009, ALJ Muskrat found that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 1-3).

On November 18, 2009, Plaintiff filed this action. On January 19, 2010, Defendant filed an Answer and the administrative record pertaining to this case. On July 26, 2010, Plaintiff filed a Motion for Summary Judgment. On August 23, 2010, Defendant filed an Opposition to Plaintiff's Motion for Summary Judgment and a Cross-Motion for Summary Judgment. On September 7, 2010, Plaintiff filed

a Reply to Defendant's Cross-Motion for Summary Judgment.

## III

## SUMMARY OF APPLICABLE LAW

Title II of the Social Security Act (hereinafter "Act"), as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423 (a)(1)(D). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. § 1382 (a). Both titles of the Act define "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months..." Id. The Act further provides that an individual:

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. Id.

The Secretary of the Social Security Administration has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines whether the claimant is engaged in "substantial gainful activity." If he is, disability benefits are denied. 20 C.F. R. §§ 404.1520(b), 416.920(b). If he is not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. That determination is governed by the "severity regulation" at issue

in this case. The severity regulation provides in relevant part:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience. §§ 404.1520(c), 416.920(c).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). Such abilities and aptitudes include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; [u]se of judgment"; "[r]esponding appropriately to supervision, co-workers, and usual work situations"; and "[d]ealing with changes in a routine work setting." Id.

If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R.

§§ 404.1520(e), 416.920(e). If the claimant cannot perform his previous work, the fifth and final step of the process determines whether he is able to perform other work in the national economy in view of his age, education, and work experience. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

## IV

## ALJ'S FINDINGS

The ALJ made the following pertinent findings:

1. (Plaintiff) meets the insured status requirements of the Social Security Act through March 31, 2012.

2. (Plaintiff) has not engaged in substantial gainful activity since May 7, 2007, the amended alleged onset date.

3. (Plaintiff) has the following severe impairment: a major depressive disorder.

4. (Plaintiff) does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

No physician has opined that (Plaintiff's) condition meets or equals any listing, and the state agency physicians have opined that it does not.

In activities of daily living, (Plaintiff) has mild restriction.

In social functioning, (Plaintiff) has moderate difficulties.

With regard to concentration, persistence and pace, (Plaintiff) has moderate difficulties.

(Plaintiff) has experienced no episodes of decompensation which have been of extended duration.

5. After careful consideration of the entire record, the undersigned finds that (Plaintiff) has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: (Plaintiff) is further limited to non-public simple repetitive tasks with

minimal contact with peers and supervisors.

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be expected as consistent with the objective medical evidence and other evidence. The undersigned has also considered opinion evidence.

(Plaintiff) has a history of a major depressive disorder recurrent. On May 16, 2007, Usha R. Ramineni, M.D., completed a mental health evaluation of (Plaintiff) and reported (Plaintiff) said he was sleeping well and eating well with mild effect. (Plaintiff) was taking his medication for his psychiatric symptoms with no side effects. (Plaintiff) was given a global assessment of functioning score of 60, which are mild symptoms.

On May 23, 2007, C. Valette Ph.D., a clinical psychologist, completed a mental status evaluation and reported (Plaintiff) was seeing a psychiatrist since April 2007 for his psychiatric symptoms. On examination, Dr. Valette said (Plaintiff's) mood and memory was normal. (Plaintiff's) judgment and concentration was also normal. Dr. Valette said (Plaintiff) had a tendency to exaggerate his difficulties and he did not put forward his best efforts into the evaluation. Dr. Valette said (Plaintiff's) poor scores were inconsistent with his adequate presentation. Dr. Valette gave (Plaintiff) no mental restrictions.

From August 2, 2007 through April 20, 2009, the County of San Diego Mental Health Service completed a mental health assessment and reported although (Plaintiff) appeared to be depressed with problems concentrating and remembering some events that took place in his life, (Plaintiff) was alert, clean and cooperative. (Plaintiff's) intellect and judgment (were) normal. (Plaintiff) was given a global assessment of functioning score of 53, which are moderate symptoms.

On May 5, 2008, Susan H. Kower, M.D.,[4] reported (Plaintiff) was unable to be gainfully employed due to his major depression recurring and his acquired brain injury.

The undersigned has considered the treating physician's opinion that (Plaintiff) is unable to be gainfully employed due to his major depression, recurrence. However, treatment records reflect conservative care with no significant abnormality. The undersigned finds Dr. Kower's opinion not credible. The undersigned finds that (Plaintiff) is not dis-

---

[4] Dr. Kower's records reflect that her name is "H. Susan Kower, M.D."

abled.

After careful consideration of the evidence, the undersigned finds that (Plaintiff's) medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, (Plaintiff's) statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

However, to the extent that it is alleged that (Plaintiff) cannot perform work at all exertional levels, the undersigned finds those allegations are not totally credible for the following clear and convincing reasons. <u>First</u>, (Plaintiff) is able to perform activities of daily living such as taking care of his personal hygiene, housekeeping and cooking.

<u>Second</u>, on May 16, 2007, Dr. Ramineni reported (Plaintiff) was sleeping well and eating well with mild effect. (Plaintiff) was taking his psychiatric medication with no side effects. (Plaintiff) was given a global assessment of functioning score of 60, which are mild symptoms.

<u>Third</u>, on May 23, 2007, Dr. Valette reported (Plaintiff's) mood, judgment and concentration and memory (were) normal. Dr. Valette said (Plaintiff) exaggerated during the interview and did not put forward his best efforts into the evaluation. Dr. Valette said (Plaintiff's) poor scores were inconsistent with his adequate presentation. Dr. Valette gave (Plaintiff) no mental restrictions.

<u>Fourth</u>, from August 2, 2007 through April 20, 2009, the County of San Diego Mental Health Service reported (Plaintiff) was alert, clean and cooperative. (Plaintiff's) insight was adequate and his behavior was cooperative. (Plaintiff's) intellect and judgment was normal. (Plaintiff) was given a global assessment of functioning score of 53, which are moderate symptoms.

Consequently, (Plaintiff's) allegations are not credible to establish a more restrictive residual functional capacity than that found above.

Findings of fact made by State Agency medical and psychological consultants regarding the nature and severity of a claimant's impairments must be treated as expert opinion evidence of a nonexamining source at the Administrative Law Judge level of adjudication (SSR 96-6p). The State Agency consultants decided at the initial and reconsideration determination levels that (Plaintiff's) condition was not of sufficient severity to prevent him from working. The State Agency

12

09cv2595

opined that (Plaintiff's) physical and mental impairments were non-severe. The State Agency concluded that (Plaintiff's) condition was not severe enough to keep him from working.

Mary Jesko, Ph.D., a vocational consultant, provided expert vocational testimony at the hearing. After a thorough review of the record, Dr. Jesko identified (Plaintiff's) past relevant work, its Dictionary of Occupational Titles' number, its skill level, and its exertional requirements as generally performed in the national economy. Accordingly, (Plaintiff) has past relevant work as: a service technician (auto) was unskilled performed at a medium level of exertion, an apprentice electrician was skilled performed at the medium level of exertion, a home attendant was semiskilled performed at a medium level of exertion and a school janitor was semiskilled performed at a medium level of exertion of the Dictionary of Occupational Titles.

Dr. Jesko then considered a question involving a hypothetical individual with (Plaintiff's) testimony and past relevant work experience. She replied that such an individual is not able to perform his past relevant work.

The court concurs with and adopts the analysis of the vocational expert and so finds.

6. (Plaintiff) is unable to perform any past relevant work.

7. (Plaintiff) was born on March 27, 1962 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. (Plaintiff) has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of 'not disabled,' whether or not (Plaintiff) has transferable job skills.

10. Considering (Plaintiff's) age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that (Plaintiff) can perform.

(Plaintiff's) ability to perform work at all exertional levels has been compromised by nonexertional limitations. To determine the extent to which these limitations erode the occupational base of unskilled work at all exertional levels, the under-

>signed asked the vocational expert whether jobs exist in the national economy for an individual with (Plaintiff's) age, education, work experience, and residual functional capacity. The vocational expert testified that given all the factors the individual would be able to perform the requirements of representative occupations such as production inspector, DOT No. 669.687-014, classified as unskilled, sedentary exertional level with 720 in the local economy and 98,000 in the national economy, a glass filler, DOT No. 692.685-114, unskilled, light exertional level with 790 in the local economy and 110,000 in the national economy, and a floor waxer, DOT No. 381.687-034, classified as unskilled, medium exertional level with 1,600 in the local economy and 1.5 in the national economy.
>
>Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.
>
>Based on the testimony of the vocational expert, the undersigned concludes that, considering (Plaintiff's) age, education, work experience, and residual functional capacity, (Plaintiff) is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of 'not disabled' is therefore appropriate under the framework of the Medical-Vocational Guidelines.
>
>11. (Plaintiff) has not been under a disability, as defined by the Social Security Act, from May 7, 2007 through the date of this decision.

## V
## THE ALJ PROPERLY REJECTED THE CONCLUSIONS OF PLAINTIFF'S TREATING PSYCHIATRIST

### A. The ALJ Properly Determined Plaintiff's Residual Functional Capacity

Plaintiff argues that the ALJ erred by substituting his own opinion of Plaintiff's residual functional capacity (hereafter "RFC") instead of adopting the opinion of Dr. Kower, one of Plaintiff's treating psychiatrists. Specifically, Plaintiff refers to Dr. Kower's opinions regarding Plaintiff's mental functioning and inability to work. (See Section I.E. of this Report and Recommendation.) Nevertheless, the ALJ found that Plaintiff "has the (RFC) to perform a full range of work at all exertional levels but with the

following non-exertional limitations: (Plaintiff) is further limited to non-public simple repetitive tasks with minimal contact with peers and supervisors." (Tr. 13). Defendant argues that the ALJ properly rejected Dr. Kower's opinion regarding Plaintiff's RFC.

It is the responsibility of the ALJ, not a claimant's physician, to determine a claimant's RFC. Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001). The ALJ's determination of a Plaintiff's RFC must be supported by substantial evidence. Morgan v. Comm. of Social Security, 169 F.3d 595, 599 (9th Cir. 1999). When the ALJ determines a claimant's RFC, he must take into account those limitations for which there is support in the record that do not depend on the claimant's subjective complaints. If the ALJ's determination of a claimant's RFC takes into account a claimant's limitations which have support in the record, a function-by-function analysis for medical conditions and impairments is unnecessary. Bayliss v. Barnhart 427 F.3d 1211, 1217 (9th Cir. 2005).

Here, Dr. Ramineni's notes reflect that Plaintiff had organized thought processes, intact judgment and insight, but impaired memory. Also, Dr. Ramineni reported that Plaintiff told him that while he was working as a janitor at an elementary school, he received a poor performance review due to his failure to secure certain parts of the school and for making inappropriate comments to teachers at the school. Further, Dr. Ramineni assigned Plaintiff a GAF score of 51-60, which indicates moderate symptoms or moderate difficulty in social, occupational or school functioning. (Tr. 354-358, 391-396).

Additionally, Dr. Garcia, who treated Plaintiff when

Plaintiff was contemplating suicide, noted that Plaintiff's thought contents were organized and coherent and his thought processes were well-directed. He assigned Plaintiff a GAF score of 65-70, which indicates some mild symptoms or some difficulty in social, occupational or school functioning, but generally functioning pretty well. (Tr. 382-383).

Further, Dr. Kower opined that Plaintiff was alert, oriented, had coherent thoughts, was depressed and anxious, had difficulty concentrating, and had impaired coping skills. (Tr. 410, 424)

The Court finds that the symptoms reported by Drs. Ramineni, Garcia and Kower are consistent with an RFC limited to simple repetitive tasks. See Stubbs-Danielson v. Astrue, 539 F.3d 1169-1174-1175 (9th Cir. 2008). The ALJ's finding in this regard is supported by substantial evidence in the record as noted by Drs. Ramineni, Garcia, and Kower. Therefore, the ALJ did not err in assigning an RFC that limited Plaintiff's potential work to simple repetitive tasks.

Moreover, Plaintiff received a poor work performance review due, in part, to his making inappropriate comments to coworkers. He also commented to Dr. Valette that his hobbies included "getting naked, show off to girlfriends my collection of thong underwear." (Tr. 322). The Court finds this comment to be an odd and peculiar response to a question regarding one's hobbies. In light of Plaintiff's inappropriate and odd comments, the Court finds that the ALJ's decision to limit Plaintiff's RFC to non-public work with minimal contact with coworkers and supervisors, was reasonable. As a result, the ALJ's decision did not err in assigning an RFC which further limited Plaintiff to non-public work with minimal contact

with peers and supervisors. Therefore, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment in this regard be DENIED and Defendant's Motion for Summary Judgment in this regard be GRANTED.

### B. The ALJ Properly Evaluated the Opinions of Plaintiff's Treating Psychiatrist

Plaintiff argues that the ALJ erred by failing to properly reject the opinions of Dr. Kower, one of Plaintiff's treating psychiatrists. Specifically, Plaintiff contends that the ALJ failed to state clear and convincing reasons for rejecting Dr. Kower's opinions. Defendant argues that the ALJ properly evaluated Dr. Kower's opinions.

An ALJ is not required to give controlling weight to the opinion of a treating physician. Batson v. Comm. of Social Security, 359 F.3d 1190, 1194-1195 (9th Cir. 2004). "Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on the ALJ with respect to the existence of an impairment or the ultimate determination of disability." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). "The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

When an ALJ is presented with conflicting medical opinions of Plaintiff's treating physicians and the opinions of consultive physicians, greater weight must be given to the opinion of the treating physicians, unless the ALJ gives specific, legitimate reasons for disregarding the opinion of the treating physician. Batson, 359 F.3d at 1195.

An ALJ may discount a treating physician's opinion if it is

presented in the form of a check list and does not have supportive objective evidence and is contradicted by other statements and assessments of a claimant's medical condition. Id. at 1195; Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996).

The ALJ specifically addressed Dr. Kower's opinions and discounted them because there was no objective medical evidence in Dr. Kower's records to support her opinions, nor any cross-references or explanations as to how she arrived at her conclusions. Consequently, the ALJ determined that Dr. Kower's opinions were not entitled to controlling weight and were inconsistent with other evidence in the record. The ALJ also rejected Dr. Kower's opinions regarding Plaintiff's most severe limitations, as not supported by the record. (Tr. 14).

The ALJ specifically and legitimately discounted Dr. Kower's opinions because her records do not provide objective medical evidence of Plaintiff's limitations as asserted in her opinions. Further, the Record was replete with evidence from Plaintiff's other treating psychiatrists and consultive mental health evaluators that Plaintiff's symptoms were not as severe as Dr. Kower opined. Further, Dr. Kower's opinions were properly discounted because they were presented in the form of check lists that were unsupported by objective evidence and were contradicted by other treating and consultive physicians' statements and assessments of Plaintiff's limitations. Batson, 359 F.3d at 1195, Crane, 76 F. 3d at 253.

As a result of the foregoing, the Court concludes that Dr. Kower's opinions were properly evaluated. Therefore, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment in this regard be DENIED and Defendant's Motion for Summary Judgment in this

regard be GRANTED.

## VI

## CONCLUSION AND RECOMMENDATION

After a review of the record in this matter, the undersigned Magistrate Judge recommends that Plaintiff's Motion for Summary Judgment be DENIED and Defendant's Motion for Summary Judgment be GRANTED.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than January 14, 2011, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than January 28, 2011. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 13, 2010

Hon. William V. Gallo
U.S. Magistrate Judge